JMK/JN
F. #2017R01809

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X

UNITED STATES OF AMERICA

- against -

MAKSIM ZASLAVSKIY,

Defendant.

------------------------------X

17M934

**To Be Filed Under Seal**

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF APPLICATION FOR
ARREST WARRANT

(18 U.S.C. §§ 371)

EASTERN DISTRICT OF NEW YORK, SS:

JON LIRO, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

Upon information and belief, in or about and between July 2017 and October 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MAKSIM ZASLAVSKIY, together with others, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit upon investors and potential investors in REcoin Group Foundation, LLC ("REcoin") and DRC World, Inc., also known as Diamond Reserve Club ("Diamond") (collectively the "Companies"),

in connection with the purchase and sale of "tokens" or "coins" in the Companies, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and 78ff. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant MAKSIM ZASLAVSKIY, together with others, committed and caused to be committed overt acts as described herein.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## INTRODUCTION

The source of your deponent's information and the grounds for his belief are as follows:

1. I have been a Special Agent with the FBI for approximately one and a half years. I am currently assigned to an FBI squad which investigates securities fraud, wire fraud and other financial crimes. During my tenure with the FBI, I have participated in numerous financial fraud investigations and have participated in all aspects of investigations, including conducting surveillance, executing search warrants, debriefing defendants and informants, interviewing witnesses, reviewing and analyzing recorded conversations and analyzing telephone toll information. During the course of these investigations, I have served as the lead investigator in the investigation and prosecution of persons involved in securities fraud, among other crimes.

2. I have personally participated in the investigation of securities fraud conspiracy by the defendant MAKSIM ZASLAVSKIY, among others, as discussed below. I am familiar with the facts and circumstances of this investigation from, among other things: (a) my personal participation in this investigation, (b) discussions with other law enforcement agents involved in this investigation, (c) my review of bank records and public records, among

other sources of evidence, and (d) my review of the defendant's testimony before the United States Securities and Exchange Commission ("SEC").

3. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I learned from other law enforcement agents. Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest the defendant MAKSIM ZASLAVSKIY, I have not set forth each and every fact learned during the course of this investigation. Instead, I have set forth only those facts that I believe are necessary to establish probable cause for the arrest warrant sought herein. In addition, where the contents of documents, or the actions, statements and conversations of others are reported herein, they are reported in sum and substance and in part, except where otherwise indicated.

## PROBABLE CAUSE

### I. Background

#### A. Relevant Regulatory Principles and Definitions

4. The term "Initial Coin Offering" or "ICO" is a fundraising event during which an entity offers participants a unique "coin" or "token" in exchange for consideration. The consideration often comes in the form of "virtual currency" or "crypto currency." ICOs are typically announced and promoted through the internet and e-mail. Issuers usually release a "whitepaper" describing the project and the terms of the ICO. In order to participate in the ICO, investors are generally required to transfer funds to the issuer. After the completion of the ICO, the issuer will distribute its unique "coin" or "token" to the participants. The tokens may entitle its holders to certain rights related to a venture underlying the ICO, such as rights to profits, shares of assets, rights to use certain services provided by the issuer, and/or voting rights. These

3

tokens may also be listed on online platforms, often called virtual currency exchanges, and be tradable for virtual currencies.

5. The term "virtual currency" is defined as a digital representation of value that can be digitally traded and functions as (1) a medium of exchange; and/or (2) a unit of account; and/or (3) a store of value, but does not have legal tender status. In other words, virtual currency is not issued by any jurisdiction and functions only by agreement within the community of users of that particular currency. Examples of virtual currency are Bitcoin and Ethereum.

6. The term "security" is defined under Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act as an "investment contract." An "investment contract" is an investment of money in a common enterprise with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. Pursuant to Sections 5(a) and 5(c) of the Securities Act, a company or individual conducting an offer or sale of securities to the public must file a registration statement with the SEC.

B. **The Defendant and Relevant Entities**

7. The defendant MAKSIM ZASLAVSKIY, a resident of Brooklyn, New York, was the sole owner of REcoin, a company that issued virtual currency that was purportedly backed by investment in real estate. The defendant MAKSIM ZASLAVSKIY was also the sole owner of Diamond, a company that issued virtual currency that was purportedly backed by investment in diamonds. From approximately July 2017 to October 2017, the defendant MAKSIM ZASLAVSKIY fraudulently raised at least $300,000 from investors through various material misrepresentations and deceptive acts relating to supposed investments in digital "tokens" or "coins" offered by REcoin and Diamond during their respective ICO processes.

8. REcoin, with its purported principal place of business in Las Vegas, Nevada, was a limited liability company organized in or about July 2017 in Nevada. REcoin purportedly engaged in the business of investing in real estate and developing real estate-related "smart contracts." REcoin was run by the defendant MAKSIM ZASLAVSKIY along with the help of others. In or about July 2017, REcoin, through the defendant MAKSIM ZASLAVSKIY, its sole owner, conducted an ICO, in which REcoin made generalized solicitations seeking investment using statements posted on the Internet and distributed throughout the world, including in the United States. In order to carry out the ICO, REcoin launched a website, https://101recoin.com, which marketed REcoin as the "First Ever Cryptocurrency Backed by Real Estate." REcoin offered to sell and sold unregistered securities to the general public.

9. Diamond, a corporation with its purported principal place of business in Puerto Rico, was incorporated in or about September 2017 in Puerto Rico. Diamond was run by the defendant MAKSIM ZASLAVSKIY along with the help of others. Diamond purportedly engaged in the business of investing in diamonds and obtaining discounts with product retailers for individuals who purchased memberships in Diamond. In or about August, 2017, Diamond announced the start of a purported Initial Membership Offering ("IMO"), which as alleged below, for all intents and purposes functioned as an ICO, for September 2017. As part of the ICO process, Diamond promised investors "a range of opportunities," and "access to more online and offline platforms." According to a Facebook post, membership in Diamond was to be "tokenized through Diamond Reserve Coin, which [was] hedged by real physical diamonds." In order to carry out the ICO, Diamond launched a website, http://drc.world, through which Diamond offered to sell and sold unregistered securities to the general public. A GoDaddy.com

5

domain name search in or about October 2017 revealed that the registrant name associated with the Diamond website is "MaksiM Zaslavskiy," and the registration address is listed as "2729 E 23rd St, Brooklyn, New York 11235."

### C. The SEC Complaint

4. On or about September 20, 2017, the defendant MAKSIM ZASLAVSKIY provided testimony to the SEC regarding his participation in the REcoin and Diamond ICOs.

5. On September 29, 2017, the SEC filed a civil complaint ("the SEC Complaint") in the Eastern District of New York charging REcoin, Diamond and the defendant MAKSIM ZASLAVSKIY with, inter alia, securities fraud, in violation of Section 17(a)(1)-(3) of the Securities Act of 1933 (15 U.S.C. 18 U.S.C. § 77q(a)(1)-(3)), Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 18 U.S.C. § 78j(b)) and Rule 10b-5(a)-(c) (17 C.F.R. § 240.10b-5(a)-(c)), and engaging in the unlawful offer and sale of securities, in violation of Sections 5(a) and 5(c) of the Securities Act (15 U.S.C. 18 U.S.C. §§ 77e(a), 77e(c)). See United States Securities and Exchange Commission v. Recoin Group Foundation, LLC, et al., 17-CV-5725 (RJD). On the same day, the SEC filed a request for a temporary restraining order ("TRO") in the case. Id.

6. The SEC Complaint alleges that from July 2017 to present, the defendant MAKSIM ZASLAVSKIY, together with others, utilized material misrepresentations and deceptive acts related to supposed investments in digital "tokens" or "coins" offered by REcoin and Diamond during the companies' respective ICOs. The complaint further alleges that the ICOs were illegal offerings of securities for which no registration statement was filed and as to which no exemption from registration was available. The TRO sought to restrain the defendant MAKSIM ZASLAVSKIY, and others, from continuing to solicit and to raise funds under the

6

guise of selling "memberships" in Diamond, which at the time the SEC complaint and TRO were filed was still actively being promoted by the defendant MAKSIM ZASLAVSKIY.

## II. The Fraudulent Scheme

### A. REcoin

7. In or about July 2017, numerous online advertisements began emerging marketing REcoin as the virtual currency founded by the defendant MAKSIM ZASLAVSKIY "backed by real estate investments in developed economies such as the United States, U.K., Switzerland, Australia, Canada and Japan." The press releases issued by REcoin provided that REcoin would be an "easily accessible financial platform through which people from all over the world can convert their savings into a real estate backed currency for the potential of high returns." REcoin was specifically advertised as a virtual currency that unlike other such currencies was backed by real estate investments.

8. In or about July 2017, a website, https://101recoin.com, marketing REcoin was launched. The REcoin website prominently featured the defendant MAKSIM ZASLAVSKIY as the CEO and founder of REcoin. The website also featured four employees of REcoin, including in the positions of marketing and development. Furthermore, during his SEC testimony, the defendant MAKSIM ZASLAVSKIY acknowledged that he operated the REcoin website along with a team of employees who worked on the project. Throughout his SEC testimony the defendant MAKSIM ZASLAVSKIY referred to his work with other individuals, many of whom are based in the Ukraine, in running REcoin.

9. Similar to the online advertisements, the website described REcoin as the "First Ever Cryptocurrency Backed by Real Estate." The website allowed purchasers to buy REcoin using their credit card, virtual currency or through online funds transfer services such as

7

PayPal and Stripe, which permit users to purchase goods and services from websites and mobile applications using the methods stored in that user's account, such as their credit cards or direct debit bank accounts. The investments offered during the REcoin ICO were "securities" within the meaning of Section 2(a)(1) of the Securities Act (15 U.S.C. § 77b(a)(1)) and Section 3(a)(10) of the Exchange Act (15 U.S.C. § 77c(a)(10)).

10. The REcoin website provided early investors with a 15% discount. The discount decreased as certain threshold levels of tokens were sold, until the close of the ICO, at which point one token would be sold at one dollar. According to press releases and the defendant MAKSIM ZASLAVSKIY's statements to the SEC, the REcoin ICO was set to run from August 7, 2017 through October 9, 2017.

11. The REcoin whitepaper,[1] which investors could access from the website, contained additional statements about the supposed REcoin token, which the whitepaper described as "an attractive investment opportunity," which "grows in value." The whitepaper identified the defendant MAKSIM ZASLAVSKIY as the founder of REcoin. The whitepaper provided that the coin currency could grow "at least in two ways through the steady increasing value of the real estate investments that REcoin is used to purchase, and a higher REcoin value when the demand for REcoin rises." The whitepaper touted that "REcoin is led by an experienced team of brokers, lawyers, and developers and invests its proceeds into global real

---

[1] At least two versions of the whitepaper have been made available to investors through the website. The above references the original version made public on the website from at least July 2017 through at least mid-August 2017. Notably, on or about August 17, 2017, only two days after the SEC first contacted the defendant MAKSIM ZASLAVSKIY to provide sworn testimony about the REcoin ICO on August 15, 2017, the REcoin whitepaper including the false statements outlined herein was substituted on the website for another version. The second version of the whitepaper continued to make some of the same misrepresentations to investors, but eliminated others.

8

estate based on the soundest strategies." The whitepaper also provided the following guarantees, among others:

> (a) "REcoin's activities are in full compliance and governed by United States law;"
>
> (b) "100% of our proceeds from REcoin sales minus maintenance costs are invested into real estate;" and
>
> (c) "The REcoin Purse is secured by the latest cryptocurrency tools and designed to be user-friendly and convenient."

12. Furthermore, users who wished to invest in REcoin were required to register on the REcoin website by providing an email address. Once a user did that, he or she received periodic communications from the defendant MAKSIM ZASLAVSKIY ("Max Zaslavskiy from REcoin") using the email address info@101recoin.com. One such communication announcing Diamond indicated that REcoin raised over $1.5 million in direct REcoin token purchases during the first three days of the presale.

13. According to the defendant MAKSIM ZASLAVSKIY's statements to the SEC, approximately 1,000 individuals invested in REcoin tokens since its launch.

14. As set forth herein, the statements made to investors in connection with the ICO were materially false and misleading, causing investors to buy REcoin tokens. First, contrary to the defendant MAKSIM ZASLAVSKIY's, and his co-conspirators', false representations, as outlined above, the defendant MAKSIM ZASLAVSKIY testified before the SEC that neither he, REcoin or any of its employees ever purchased any real estate, either before, during or after the REcoin ICO. Second, contrary to the pronouncement in the whitepaper that REcoin was led by an experienced team of brokers, lawyers and developers, the defendant

MAKSIM ZASLAVSKIY testified before the SEC that he never hired, let alone consulted, any broker, lawyer or developer to engage in the supposed real estate investments. Third, a counter near the top of the REcoin website stated, as of late August and early September 2017, that over 2.8 million "REC" had been "already purchased." However, based on the defendant MAKSIM ZASLAVSKIY's own statements to the SEC, REcoin had only obtained approximately $300,000 in funds from investors. Furthermore, while investors transferred funds to the defendant MAKSIM ZASLAVSKIY, his co-conspirators, and REcoin and received certificates in return indicating their ownership in REcoin tokens, according to the defendant MAKSIM ZASLAVSKIY's statements to the SEC, no token or coin for REcoin has ever been developed, and therefore, investors never received any form of digital asset, token or coin.

15. Interviews with investors revealed that individual investors relied on the representations made by REcoin in its marketing materials, on its website and in its whitepaper, among other sources, in deciding to make the investment in REcoin. Interviews with investors revealed that some were particularly influenced to make the investment in REcoin because it was guaranteed by real estate, which, as described above, was never purchased or seriously explored by the defendant MAKSIM ZASLAVSKIY or any of the REcoin employees.

B. **Diamond**

16. In or about July 2017, the defendant MAKSIM ZASLAVSKIY, along with others, began to market Diamond. The marketing materials for Diamond provided that the "basis for the Diamond Reserve Club tokenized membership is the ownerships of Diamond Reserve Coin (DRC), which is hedged by physical diamonds."

17. In or about September 2017, a website, https://drc.world, marketing Diamond was launched. The Diamond website identified the defendant MAKSIM

ZASLAVSKIY as the founder of Diamond. Furthermore, during his SEC testimony, the defendant MAKSIM ZASLAVSKIY acknowledged that he operated the Diamond website along with a team of employees who worked on the project. Throughout his SEC testimony the defendant MAKSIM ZASLAVSKIY referred to his work with other individuals, many of whom are based in the Ukraine, in running Diamond. Based on the defendant MAKSIM ZASLAVSKIY's SEC testimony, the team running REcoin and Diamond was largely the same.

18. Similar to the REcoin website, the Diamond website contained a link to a whitepaper for the Diamond ICO. The supposed benefits of membership in Diamond were not clearly defined in the whitepaper, nor in other communications with the potential and actual investors in Diamond. The Diamond whitepaper provided that the goals of the "Diamond Reserve Club are: to offer unique opportunities and benefits...; to indefinitely prolong the lifespan and development of the Diamond Reserve Coin to increase its liquidity, visibility, enhance its credibility worldwide..." The whitepaper proclaimed that the Diamond coin "is hedged by physical diamonds which are stored in secure locations in the United States and are fully insured for their value."

19. The Diamond website permitted users to buy Diamond tokens using credit cards or virtual currency. On or about August 31, 2017, the Diamond website announced the start of an IMO. The announcement linked to a Facebook post announcing the Diamond ICO for September 7, 2017. Diamond tried to distinguish the IMO from an ICO. For example, a Facebook post stated that "IMO is a brand new instrument of facilitating tokenized membership in a digital community or a club. Although, it appears to be similar to ICO or IPO, the similarities are scarce, not nonexistent." However, Diamond was an ICO because it provided investors with an expectation of profits to be derived from the purchase of diamonds, and the

investments offered during the ICO were "securities" within the meaning of Section 2(a)(1) of the Securities Act (15 U.S.C. § 77b(a)(1)) and Section 3(a)(10) of the Exchange Act (15 U.S.C. § 77c(a)(10)).

20. A release dated September 11, 2017 on Reddit (the "Reddit Release"), titled "official statement" by the "founder and CEO of REcoin," proclaimed the supposed success of the REcoin ICO by reiterating the false statement made in prior releases that, after the REcoin ICO began on August 7, 2017, "over $1.5 million in direct REcoin token purchases [were made]." The Reddit Release announced the end of the REcoin ICO and the conversion of a REcoin token into a Diamond token. Potential Diamond ICO investors were offered a discount similar to the REcoin ICO discount, such that investors purchasing the Diamond token during the first stage of the Diamond ICO would receive a 15% discount. As with the REcoin ICO, the discount decreased as certain threshold levels of tokens were sold, until the close of the ICO, at which point one token would be sold at one dollar. The Reddit Release stated that "members" of the "club" were "entitled to all the opportunities and benefits they were promised at the time of joining the REcoin community." It went on to offer individuals that invested in the REcoin ICO either a refund of their investment, or the ability to convert their REcoin token into a Diamond coin at a discount. The release encouraged investors to stay with the project and stated that the diamonds backing the investment are "especially stored in secure locations in the United States and fully insured for their full value."

21. Furthermore, just like with REcoin, users who wished to invest in Diamond were required to register on the Diamond website by providing an email address. Once a user did that, he or she received periodic communications from the defendant MAKSIM ZASLAVSKIY ("Max from DRC") using the email address info@drc.world. In these

12

communications, the defendant MAKSIM ZASLAVSKIY, along with others, attempted to induce investors to purchase the Diamond token by stating, for example, that Diamond "forecast a minimum growth of 10% to 15% per year." In another email, the defendant MAKSIM ZASLAVSKIY urged investors to buy Diamond and stated that "negotiations with different exchanges" were ongoing so that investors could trade Diamond "on external exchanges and make more profit."

22. According to the defendant MAKSIM ZASLAVSKIY's statements to the SEC, Diamond has secured approximately $100,000 in individual investment since its launch. The majority of these investments were transferred from REcoin.

23. The statements made to investors in connection with the Diamond ICO were materially false and misleading. As an initial matter, the Reddit Release began with a false description of the amounts raised during the REcoin ICO. As the defendant admitted in his testimony to the SEC, he only raised approximately $300,000 from the REcoin ICO, not "over $1.5 million." Furthermore, according to the defendant MAKSIM ZASLAVSKIY's own statements to the SEC, neither the defendant MAKSIM ZASLAVSKIY nor Diamond had purchased any diamonds nor identified any storage locations, as touted in the whitepaper and the Reddit Release, and there was no insurance taken out on the non-existent diamonds. Similar to the REcoin ICO, contrary to what was stated in the whitepaper, the Reddit Release and email communications to investors, the defendant MAKSIM ZASLAVSKIY admitted in his SEC testimony that no tokens or coins had ever been developed with respect to Diamond, and those investors who transferred funds to the defendant MAKSIM ZASLAVSKIY, his co-conspirators and Diamond during the Diamond ICO were given no coins or tokens in return.

### III. CONCLUSION

WHEREFORE, based on the foregoing, your deponent respectfully requests that an arrest warrant be issued for the defendant MAKSIM ZASLAVSKIY so that he may be dealt with according to law.

Because public filing of this document could result in a risk of flight by the defendant MAKSIM ZASLAVSKIY, as well as jeopardize the government's ongoing investigation, your deponent respectfully requests that this complaint, as well as any arrest warrant issued in connection with this complaint, be filed under seal.

Dated:   Brooklyn, New York
         October 27, 2017

_____
JON LIRO
Special Agent, FBI

Sworn to before me this
27th day of October, 2017

_____
THE HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK